UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
MARGARITA METZ and MANUEL METZ,    )
                                   )
        Plaintiffs,                )
                                   )
    v.                             )   C.A. No. 23-510 WES
                                   )
STATE FARM FIRE AND CASUALTY       )
COMPANY,                           )
                                   )
        Defendant.                 )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Senior District Judge.

Before the Court are Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment ("Defendant's Motion"), Dkt. No. 26, and Plaintiffs', Margarita Metz' and Manuel Metz's, Motion for Partial Summary Judgment ("Plaintiffs' Motion"), Dkt. No. 28. These motions seek to resolve the parties' ongoing dispute regarding the applicability of Plaintiffs' homeowner's insurance policy to remediate water damage to their former residence (the "Property").[1]  For the reasons below, the Court grants Defendant's Motion and denies Plaintiffs' Motion.

---

[1] Previously, the Court granted in part Defendant's Motion to Bifurcate this action pursuant to Rule 42(b) of the Federal Rules of Civil Procedure and stayed Plaintiffs' claims for bad faith pending the Court's resolution of their contractual claims. Text Order (June 24, 2024).  Although Plaintiffs have not moved for summary judgment on their bad faith claims, Defendant requests that the Court resolve this case in its entirety.  See Wolf v.

I.  **BACKGROUND**

This case arises from Defendant's denial of insurance coverage to redress severe water damage in Plaintiffs' former residence in Bristol, Rhode Island. See Pl.s' Statement Undisputed Facts ("PSUF") ¶ 1, Dkt. No. 29. In "September of 2022" Plaintiffs moved out of the Property, which prompted their daughter, Tamara Metz, to begin checking in on it periodically. Id. ¶ 3-4. Plaintiffs concede that this home lacked a full-time occupant once they moved out of the Property. Id. Approximately seven months later, "[o]n or around April 24, 2023," a landscaping company contacted Tamara Metz and informed her of severe water damage at the Property. Id. ¶ 6. In response, Ms. Metz arranged for her husband to visit the Property leading him to discover a water leak that he described as "pretty catastrophic looking." Id. ¶¶ 7-9. Following a report to Defendant that same day, Plaintiffs sought coverage for damage to both the dwelling itself and the personal property within it.[2] Id. ¶¶ 16-17, 27.

After Plaintiffs requested coverage, Defendant undertook an investigation using an independent adjusting company named

---

Geico Ins. Co., 682 F. Supp. 2d 197, 198 (D.R.I. 2010) (noting that an action for bad faith does not exist until a plaintiff first establishes a breach of contract).

[2] The policy at issue contains separate provisions for damage to the dwelling itself "Coverage A" and damage to the property within the dwelling "Coverage B." Pl.'s Statement Undisputed Facts ("PSUF") ¶ 17, Dkt. No. 29.

Sedgwick. Id. ¶ 30. Pursuant to the investigation, Sedgwick employee Cameo Clark requested a variety of information associated with this accident and assigned another company, American Leak Detection, to inspect the premises. Id. ¶¶ 31-33. Along with other documentation, Clark obtained a water record from Plaintiffs' public adjuster Gentili & Rossini. Id. ¶¶ 32, 34-35. Specifically, these records displayed the amount of water used over the four years preceding the accident in three-month increments. Id. ¶ 35. Importantly, the records indicate that the household typically used between 6,000 and 12,000 gallons during each three-month period when Plaintiffs lived at the Property. Id. From January 22 to April 23, 2023, the records indicate that the Property used 870,732.53 gallons of water.[3] See id. Ex. 13, at 11, Dkt. No. 29-13. During the prior three-month period, the first full period after Plaintiffs vacated the residence, the Property used zero gallons of water. Id.

With respect to the inspection conducted by American Leak Detection, technician Aaron Mann's report contained the following notes:

> I arrived at the residence and was allowed entry by the public adjustor. There is very severe damage to most of

---

[3] For reference, an Olympic-sized swimming pool holds about 660,000 gallons of water. Grace Jidoun, How Big Is an Olympic Swimming Pool? Your Questions Answered Ahead of the Summer Games, NBC (Apr. 24, 2024, 2:51 PM), https://www.nbc.com/nbc-insider/olympic-swimming-pool-size-gallons-meters-depth.

3

>     the property.  The hot water shutoff to the second-floor
>     bathroom vanity failed and water ran through the house
>     for an extended amount of time.  The line was cut and
>     capped before my arrival.  I turned the water on and
>     filled the system.  There are no other leaks at this
>     time.  I shut the main supply off before my departure.

Def.'s Mot. Ex. D, Dkt. No. 26-2.[4]

Moreover, a claim note from Clark indicates that she spoke to a Bristol County Water Authority employee named Donna and sought further clarification regarding the size of the leak. PSUF Ex. 10, at 6, Dkt. No. 29-10. Clark's notes indicate that Donna advised her that the leak began on or about February 6, 2023, and ended around April 24, 2023, which resulted in a water bill of $7,280.08.[5] Id. Following its investigation, Defendant denied the claim and noted that Plaintiffs' policy excludes coverage for damage caused by the seepage or leakage of water that develops over a period of time. PSUF ¶¶ 46-47. After this Court denied Defendant's motion for judgment on the pleadings, both parties moved for summary judgment. See Mem. & Order (Feb. 14, 2025), Dkt. No. 21.

---

[4] In their opposition to Defendant's Motion, Plaintiffs take issue with this statement: (1) to the extent that it imprecisely describes the duration of the leak; and (2) because it constitutes hearsay and is therefore allegedly improper evidence for consideration on summary judgment. Pls.' Statement of Disputed Facts("PSDF") 3, Dkt. No. 35.

[5] Plaintiffs also object to this evidence, arguing that it constitutes hearsay and questioning Defendants' failure to obtain the underlying data from the Bristol County Water Authority to support this claim. See Pls.' Mem. 16 & n.6, Dkt. No. 29-1.

## II. Legal Standard

To succeed on a motion for summary judgment, litigants must demonstrate that a genuine issue of material fact does not exist and that they are entitled to judgment as a matter of law. See Boykin v. Genzyme Therapeutic Prods., LP, 93 F.4th 56, 60 (1st Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "The summary judgment ritual is standard fare: once the movant adumbrates an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of a genuine issue of material fact." Id. (citation modified). Importantly, "to carry this burden, the nonmovant cannot simply rely on evidence that is conjectural or problematic but, rather, must present definite, competent evidence." Id. (citation modified). Relatedly, the interpretation of an insurance contract is a question of law and courts will assess the policies using the same rules that govern the construction of contracts. See Atmed Treatment Ctr., Inc. v. Travelers Indem. Co., 285 A.3d 352, 359-60 (R.I. 2022).

Here, both parties agree that the Court's interpretation of the "seepage or leakage" exclusions, contained in both the sections of the policy providing coverage for damage to the dwelling and for personal property, dictates the outcome of their dispute.[6] These exclusions provide the following in relevant part:

---

[6] Defendant also notes that the policy contains a similar coverage exemption under its "limited coverage endorsement" for

> Section 1 – Losses Not Insured [By Coverage A]
> 1. We will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
> . . . .
>   f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:
>     (1) and is:
>       (a) continuous;
>       (b) repeating;
>       (c) gradual;
>       (d) intermittent;
>       (e) slow; or
>       (f) trickling; and
>     (2) from a:
> . . . .
>       (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.
>   We also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

Def.'s Mot. Ex. A, at 0033-34, Dkt. No. 26-2.[7]

---

the remediation of fungus. See Def.'s Mem. L. Supp. Opp'n Pl.'s Mot. Summ. J. 5-6, Dkt. No. 31. Plaintiffs do not appear to assert that a separate interpretation of this section or its exemptions would alter its ability to obtain coverage for their losses. See generally Pls.' Mem. L. Supp. Mot. Partial Summ. J., Dkt. No. 28.

[7] Although organized differently, the policy's explanation of coverage for damage to personal property contains effectively the same exclusionary language. See Def.'s Mot. Ex. A, at 0033-34, Dkt. No. 26-2. Moreover, with the exception of one argument addressed below, neither party has asserted that the Court's interpretation should diverge based on the aforementioned differences. As a result, the Court will not provide duplicative analyses of these near-identical provisions.

The Court's review of the record and the language contained in the policy suggests that Defendant properly declined to provide Plaintiffs coverage for the damage to the Property. Specifically, the record reveals that Defendant investigated the cause of the water damage and determined that it originated from a failed hot water shutoff located in Plaintiffs' second floor vanity. Def.'s Mot. Ex. D, at SF00138, Dkt. No. 26-2. This water shutoff's failure caused 870,732.53 gallons of water to leak out of this source between January 22, 2023, and April 23, 2023, which, coincidentally, is the day before the water damage was discovered. PSUF ¶ 35, id. Ex. 13, at 11.

Although Plaintiffs contest the admissibility of the more granular details underlying this event, they do not dispute the underlying cause of the water damage, or the amount of water released over this period of time. Therefore, even when viewing the record in the light most favorable to Plaintiffs, the uncontroverted factual record in this matter demonstrates that this 870,732.53-gallon release that resulted from the failed shutoff constitutes a "continuous" or a "repeating" "seepage or leakage of water" "from a plumbing system" that "occur[ed] or develop[ed] over a period of time" and therefore falls outside the coverage provided by their insurance policy. See Def.'s Mot. Ex. A, at 0034. What's more, Plaintiffs have failed to present "definite, competent evidence" that would contradict the core

7

narrative of what Defendant's investigation reveals: the cause of this water damage originated from a leak that took place at a minimum over the course of several weeks, and probably multiple months.  Plaintiffs have failed to direct the Court to record evidence that would provide a plausible, alternative explanation for the series of events that could have resulted in the damage to the Property.  As a result, this Court grants summary judgment in Defendant's favor.

Nevertheless, Plaintiffs argue the Court may not grant summary judgment in Defendant's favor based on what they identify as supposed evidentiary issues rooted in the rule against hearsay. Similarly, Plaintiffs assert that their interpretation of the evidentiary record and the policy permits the Court to grant summary judgment in their favor.  The Court finds neither argument convincing.

With respect to their opposition to Defendant's Motion, Plaintiffs object to Defendant's reliance on the report prepared by Defendant's agent and its summary of a conversation with the employee from the Bristol County Water Authority.  Specifically, Plaintiffs take issue with the note stating that the water ran through Plaintiffs' property over the course of seventy-seven days.  Pls.' Mem. L. Supp. Mot. Partial Summ. J. ("Pls.' Mem.") 15-16, Dkt. No. 28-1.  According to Plaintiffs, both the report itself and the statements contained within it constitute hearsay

and therefore the Court must refrain from relying upon them at summary judgment.  Id. at 16.  The Court finds this argument unavailing.

Although Defendant relies on the information contained in the report on summary judgment, Defendant would undoubtedly call both the author of the report itself and a knowledgeable representative from the Bristol County Water Authority to provide direct testimony surrounding the investigation that took place and the data obtained to determine the source of this damage at trial.  As a result, Plaintiffs' evidentiary concerns fail to present a valid obstacle at this stage of the dispute.  See Estate of Rahim v. Doe, 51 F.4th 402, 412 (1st Cir. 2022) ("The standard is not whether the evidence at the summary judgment stage would be admissible at trial — it is whether it could be presented at trial in an admissible form.") (citation modified).  Therefore, the Court rejects Plaintiffs' attempt to prevent its reliance on this evidence.

Even if the Court declined to consider the report on summary judgment, the record contains sufficient evidence for it to rule in Defendant's favor.  However, the Court notes that this report provides an unquestionably stronger basis for its determination that a seventy-seven-day long discharge of water constitutes a "continuous" or "repeating" discharge of water that took place "over a period of time."  See Def.'s Mot. Ex. A, at 0034.  Once again, the Court's reliance on this evidence is significantly

bolstered by the fact that Plaintiffs have failed to assert a plausible alternative explanation for the events that took place at the Property using record evidence.

With respect to Plaintiffs' request for summary judgment in their favor, the Court declines Plaintiffs' invitation to read either the record or the policy in a manner that would prevent the exemption from applying. Specifically, Plaintiffs appear to ask the Court to engage in a myopically literal reading of the phrase "period of time" and conclude that this policy results in "illusory coverage." Pls.' Mem. 8-9. However, because the record in this matter reflects a virtually uncontroverted narrative that the leak took place over the course of several weeks, the Court will refrain from engaging in the mental gymnastics necessary to determine whether the plain meaning of the phase "period of time" would allow an insurer to decline coverage under this policy under every conceivable factual scenario involving a leak. See Allstate Ins. v. Ahlquist, 59 A.3d 95, 98 (R.I. 2013) ("We refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present. The test to be applied is not what the insurer intended, but what the ordinary reader and purchaser would have understood the language to mean.") (citation modified). While it is possible in a case with a different set of facts the policy language might create an

10

ambiguity, the only issue before the Court is whether the policy is ambiguous as applied to <u>these</u> facts. It is not.

Similarly, the Court rejects Plaintiffs' assertion that the policy's use of the phrase "abrupt and accidental discharge or overflow of water" impliedly suggests that it only prevents coverage from leaks that involve a small volume of water or that occur at a slow pace. <u>See</u> Pls.' Mem. 8, 18. The plain language of the policy does not permit this inference and the Court refuses to depart from the policy's text absent the existence of any ambiguous language. The Court also rejects Plaintiffs' attempt to assemble a collection of cases from other jurisdictions in an effort to demonstrate that the high volume of water that leaked into the Property prevents the Court from characterizing it as a leak. <u>See</u> <u>id.</u> 18-19. To be sure, a leak of 870,732.53 gallons of water over the period of seventy-seven days is an enormous volume of water. However, as Plaintiffs indicate, a leak of this magnitude would involve water leaking at a rate of 11,298 gallons each day or roughly 470 gallons each hour. This rate slightly exceeds the flow rate of a strong bathtub faucet. <u>See</u> Quality Bath, A Guide to Water Flow Rates (Dec. 18, 2017), https://www.qualitybath.com/discover/post/18226/guide-water-flow-rates?srsltid=AfmBOoru-gNALY-07MgrAfT3oNEYEqRC6hE6NUgRxGzCz6hNQWUiKpS6.

This suggests that the leak here could reasonably be expected to have taken place due to malfunctioning plumbing in an average household and not only as a result of a cataclysmic accident. Similarly, the volume of water by itself does not necessarily suggest that the damage to the Property resulted from an unpreventable or unforeseeable event. Instead, based on the record before the Court, it appears that an inspection of the Property on a more frequent basis would have drastically altered the volume of water ultimately present in late April 2023. The Court therefore rejects Plaintiffs' attempt to argue that the volume of water found at the Property should somehow prevent it from characterizing the damage as a leak under the policy's exclusions. Consequently, the Court rejects the Plaintiffs' request to reach a contrary ruling.

**III. CONCLUSION**

Based on the foregoing, the Court concludes that the Defendant has successfully demonstrated its entitlement to summary judgment. As a result, the Court GRANTS Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment, Dkt. No. 26, and DENIES Plaintiffs', Margarita Metz' and Manuel Metz's, Motion for Partial Summary Judgment, Dkt. No. 28.

IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
Senior District Judge
Date: January 14, 2026